Matter of Clean Air Coalition of W. N.Y., Inc. v New York State Pub. Serv. Commission

2026 NY Slip Op 03344

May 28, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Clean Air Coalition of Western New York, Inc., et al, Respondents,

v

New York State Public Service Commission, Respondent, and Fortistar North Tonawanda, LLC, et al., Appellants. (And Another Related Proceeding.)

Decided and Entered:May 28, 2026

CV-24-2101

Calendar Date: April 21, 2026

Before: Garry, P.J., Ceresia, Powers And Mackey, JJ.

Phillips Lytle LLP, Buffalo (Joshua Glasgow of counsel), for Fortistar North Tonawanda, LLC and another, appellants.

Read and Laniado, LLP, Albany (Zachary W. Perdek of counsel), for North Tonowanda Holdings, LLC, appellant.

Earthjustice, New York City (Dror Ladin of counsel), for Clean Air Coalition of Western New York, Inc. and another, respondents.

[*1]

Powers, J.

Appeal from a judgment of the Supreme Court (Richard Platkin, J.), entered November 14, 2024 in Albany County, which partially granted petitioners' applications, in two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, to review a determination of respondent Public Service Commission approving the transfer of ownership shares in a natural gas-fired power generation facility, and denying petitioners' request for a rehearing.

The underlying facts of this matter are familiar to this Court as we previously reversed dismissal of the petition/complaint as against respondent Public Service Commission (hereinafter the PSC) (226 AD3d 108 [3d Dept 2024]). Briefly, in 2021, respondent Digihost International Inc. contracted for the acquisition of respondent Fortistar North Tonawanda, LLC from respondent North Tonawanda Holdings, LLC (hereinafter collectively referred to as respondents). This acquisition would result in Digihost's ownership of a natural gas-fired electric generating facility in the City of North Tonawanda, Niagara County, which would then be used to power its crypto-currency mining operation. In April 2021, Fortistar and Digihost petitioned the PSC for a declaratory ruling that the proposed transaction did not require further review under Public Service Law §§ 70 and 83 or, alternatively, asking that the transaction be approved with a finding that it is in the public interest. The PSC granted that petition over opposition raised by petitioners, among others, and issued a declaratory ruling that the proposed transaction did not require further review. Petitioners requested that the PSC grant rehearing and, while that request was pending, commenced the first of the two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment that underlie this appeal.

In that first combined proceeding, petitioners asserted that the PSC's declaratory ruling did not comport with the requirement set forth in the Climate Leadership and Community Protection Act (L 2019, ch 106 [hereinafter CLCPA]) that, prior to issuing any approval, agencies consider whether doing so will disproportionately burden disadvantaged communities or interfere with the attainment of the greenhouse gas emissions limits set forth in CLCPA and codified in ECL article 75. Supreme Court ultimately granted PSC's motion to dismiss on ripeness grounds in view of the still-pending rehearing request. As stated above, we reversed that dismissal. However, while the prior appeal was pending, the PSC denied the rehearing request and petitioners commenced the second underlying combined proceeding challenging that denial. Following this Court's remittal in the prior appeal and consolidation of the two combined proceedings, Supreme Court partially granted the sought-after relief by finding that the declaratory ruling constituted an administrative approval requiring CLCPA consideration and that, when issuing that ruling, the PSC failed to consider [*2]the impact that approval may have to the state's attainment of greenhouse gas emission limits. The court further found that the PSC did not undertake such analysis in its order on rehearing as it had merely reaffirmed the PSC's position that no analysis was required.FN1 Respondents appeal.FN2

"In a CPLR article 78 proceeding to review a determination of an administrative agency, the standard of judicial review is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Winkler v New York State Educ. Dept., 245 AD3d 1045, 1046 [3d Dept 2026] [internal quotation marks and citations omitted]). "[W]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature. The starting point for discerning legislative intent is the language of the statute itself. That is, the literal language of a statute controls unless the plain intent and purpose of the statute would otherwise be defeated" (Matter of Central Hudson Gas & Elec. Corp. v State of N.Y. Pub. Serv. Commn., 242 AD3d 33, 37 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]). "Where the question presented is one of pure statutory interpretation, we consider the statutory language and legislative history without deference to the [agency's] interpretation" (Matter of Charter Communications, Inc. v New York State Tax Appeals Trib., 244 AD3d 1634, 1636 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Saratoga Economic Dev. Corp. v State of N.Y. Auths. Budget Off., 222 AD3d 1072, 1074 [3d Dept 2023], lv denied 41 NY3d 910 [2024]). As a result, an agency's interpretation of a statute that conflicts with its plain language or is inconsistent with its legislative intent is arbitrary and capricious (see Matter of Central Hudson Gas & Elec. Corp. v State of N.Y. Pub. Serv. Commn., 242 AD3d at 39; Matter of Marathon Power LLC v Public Serv. Commn. of the State of N.Y., 209 AD3d 1245, 1247 [3d Dept 2022], lv denied 39 NY3d 913 [2023]; Matter of R.J. Land, Inc. v Town of Mamakating, 92 AD3d 1004, 1005 [3d Dept 2012]).

For background, "[i]n the absence of any comprehensive federal laws to control greenhouse gas emissions, states have played a leading role on climate change mitigation in the United States" and, as such, many have established specific guideposts for the reduction of greenhouse gas emissions over the coming decades (3 Environmental Protection § 24:9 [Jan 2026 update]). Consistent with this movement, the Legislature enacted CLCPA to "put the state on a path to net zero emissions" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 106 at 8) and set forth the goal of "reduc[ing] greenhouse gas emissions from all anthropogenic sources 100% over 1990 levels by the year 2050, with an incremental target of at least a 40[%] reduction . . . by the year [*3]2030" (L 2019, ch 106, § 1 [4]; see generally Glen Oaks Vil. Owners, Inc. v City of New York, 44 NY3d 468, 471-472, 475 [2025]; Matter of Prattsburgh Preserv. Alliance Inc. v New York State Off. of Renewable Energy Siting & Elec. Transmission, ___ AD3d ___, ___, 2026 NY Slip Op 03037, *1 [3d Dept 2026]).

To assist in accomplishing this ambitious goal, the Legislature has required that, "[i]n considering and issuing permits, licenses, and other administrative approvals and decisions, including but not limited to the execution of grants, loans, and contracts, all state agencies, offices, authorities, and divisions shall consider whether such decisions are inconsistent with or will interfere with the attainment of the statewide greenhouse gas emissions limits established in article 75 of the [E]nvironmental [C]onservation [L]aw. Where such decisions are deemed to be inconsistent with or will interfere with the attainment of the statewide greenhouse gas emissions limits, each agency, office, authority, or division shall provide a detailed statement of justification as to why such limits/criteria may not be met, and identify alternatives or greenhouse gas mitigation measures to be required where such project is located" (L 2019, ch 106, § 7 [2]; see ECL 75-0107 [1]). This provision, as well as others in the bill, was intended to "provide for additional authority for state agencies to promulgate greenhouse gas regulations" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 106 at 8).

Relevant to the acquisition for which respondents sought approval, Public Service Law § 70 (1) pronounces that "[n]o gas corporation or electric corporation shall transfer or lease its franchise, works or system or any part of such franchise, works or system to any other person or corporation or contract for the operation of its works and system, without the written consent of the [PSC]." Similarly, pursuant to Public Service Law § 83 (1), "[n]o steam corporation shall transfer or lease its franchise, works or system or any part of such franchise, works or system to any other person or corporation or contract for the operation of its works and system, without the written consent of the [PSC]." In what has since been titled the Wallkill Presumption, the PSC has adopted the position that, when requests are made for consent under these provisions, "full regulatory review is not needed for transfers of indirect, upstream ownership interests in lightly-regulated electric and gas corporations unless the proposed transfer presents a risk of market power or harm to captive ratepayers" (Declaratory Ruling on Review of Transfer Transactions, NY PSC Case No. 20-E-0204 [July 17, 2020]; see Declaratory Ruling on Upstream Transfer Transaction, NY PSC Case No. 21-S-0108 [Apr. 16, 2021]). Notably, however, the PSC still acknowledged in the decision originating this principle that applicants must "petition[ ] for approval of . . . transactions. Those petitions, however, will be [*4]reviewed with . . . reduced scrutiny" (Order Establishing Regulatory Regime, NY PSC Case No. 91-E-0350 [Apr. 11, 1994]).

Respondents' contentions are in essence twofold. Initially, it is asserted that CLCPA analysis is not required in the first instance because the PSC's decision was a declaratory ruling that did not amount to an administrative approval pursuant to the statutory scheme. Instead, respondents claim that the declaratory ruling was simply a determination that no further review — i.e., approval — was necessary. Alternatively, respondents maintain that the PSC did, in fact, undertake the required CLCPA analysis, as evidenced by the language in the rehearing order which states that the declaratory ruling "will not interfere with the attainment of" greenhouse gas emissions limits. We see no merit in either position.

Supreme Court correctly found that the PSC's interpretation that the declaratory ruling did not necessitate CLCPA consideration was contrary to the plain language of that statute and was, therefore, arbitrary and capricious (compare Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 280 [2003]; Matter of Central Hudson Gas & Elec. Corp. v State of N.Y. Pub. Serv. Commn., 242 AD3d at 39; see generally Matter of Mid Is. Therapy Assoc., LLC v New York State Educ. Dept., 129 AD3d 1173, 1175 [3d Dept 2015]). Public Service Law §§ 70 (1) and 83 (1) require that acquisitions of this type have the "written consent of the [PSC]" and, while the Wallkill Presumption provides a less rigorous review if certain factors are met, it still stands true that consent — i.e., approval — was required from the PSC. The declaratory ruling had the effect of approval inasmuch as it determined that the acquisition was subject to this lower standard of review and no further review was necessary. The PSC thus consented to the acquisition. On account of the declaratory ruling being an "administrative approval[ ]," consideration of "whether such decision[ ] . . . will interfere with the attainment of the statewide greenhouse gas emissions limits" was required, yet the PSC failed to undertake that review (L 2019, ch 106, § 7 [2]). Respondents' assertion that such review by the PSC was not required because the facility itself is regulated by the Department of Environmental Conservation is belied by the plain language and the purpose of the CLCPA provisions at issue here, which were intended to provide agencies added authority to regulate greenhouse gas emissions (see Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 106 at 8-9).

As Supreme Court also found, the assertion contained in the rehearing order that the declaratory ruling would not interfere with the attainment of greenhouse gas emissions limits failed to satisfy the PSC's obligations under CLCPA. The rehearing order merely noted that, "[g]iven that the existing [f]acility permit was issued in accordance with environmental statutes and regulations . . . the [d]eclaratory [r]uling is [*5]not inconsistent with, and will not interfere with the attainment of, the statewide [greenhouse] gas emissions limits." Setting aside that this assertion was contained in the rehearing order, which expressly found that the declaratory ruling did not operate as an administrative approval requiring CLCPA consideration, any permitting that may be issued for the operation of this facility by the Department of Environmental Conservation does not speak to how the PSC's decision to allow the acquisition may be "inconsistent with or will interfere with the attainment of the statewide greenhouse gas emissions limits" (L 2019, ch 106, § 7 [2]). Likewise, the review the PSC has since undertaken illustrates that this pro forma statement was not meant to encapsulate the full review required under CLCPA (see generally 2nd NYS DPS Department Staff Directive for Clarification and Documents, NY PSC Case No. 21-M-0238 [Sept. 24, 2025]). All told, the court properly granted these aspects of the consolidated petitions/complaints seeking annulment (see CPLR 7803 [3]).

Garry, P.J., Ceresia and Mackey, JJ., concur.

ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1

Supreme Court also found that the PSC could not have failed to consider the impact to disadvantaged communities as identified in ECL 75-0101 (5) as no such communities had been definitively identified at the time the approval was issued. No issue with respect to that determination has been raised before this Court and, even if it had, petitioners have not appealed therefrom (see generally CPLR 5511).

Footnote 2

The PSC has not participated in this appeal.